

United States Courts
Southern District of Texas
ENTERED

FEB 1 3 2006

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A2D TECHNOLOGIES, *et al*, | § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. H-05-01750 |
| M.J. SYSTEMS, INC., *et al*, | § § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Before the Court is the defendant, M.J. Systems Inc., ("M.J. Systems") motion to dismiss for failure to state a cause of action pursuant to Fed. R. Civ. Pro. Rule 12(b)(6). The plaintiffs, A2D Technologies Incorporated ("A2D") and Riley Electric Log ("Riley")[1], filed a response opposing M.J. Systems' motion to dismiss. M.J. Systems then filed a response in support of its motion to dismiss, only to draw A2D's sur-reply supporting its response opposing M.J. Systems' motion to dismiss. After considering the motions, the pleadings, the responses and the applicable law, the Court determines that M.J. Systems' motion to dismiss should be Granted in part and Denied in part.

**II.    FACTUAL HISTORY**

Both M.J. Systems and Riley are engaged in the business of reproducing well logs for their respective customers. They collect well logs from public and non-public sources and archive the logs for later reproduction pursuant to customer requests. Well logs measure and

---

[1] In, 2001, A2D acquired Riley. All references to the plaintiffs hereafter will be under the name A2D.

1

record the types of rock formation and oil and gas properties of particular oil or gas well. The record reflects that, the parties have been competitors for over 20 years.

In 1983, Riley sued M.J. Systems complaining that M.J. Systems had reproduced well logs bearing Riley's mark in violation of 15 U.S.C. § 1125(a). Riley generally places its logo in the header of the well logs that it archives. Hence, it was Riley's claim that M.J. Systems reproductions constituted infringement of Riley's trademark and thereby injured Riley's reputation because of the poor quality of M.J. Systems' reproductions, among other claims.

In 1984, Riley and M.J. Systems entered into a Settlement Agreement ending the 1983 litigation. Since, Riley has been acquired by A2D and therefore authorized to use the Riley mark in connection with its customers. A2D then brought this suit against M.J. Systems alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), dilution in violation of the Tex. Bus. & Comm. Code 16.29, common law claims of unfair competition, toritious interference through reproduction and misappropriation, and breach of contract.

## III. CONTENTIONS

*a) M.J. Systems' Contentions*

M.J. Systems contends that counts one through six of A2D's amended complaint, [referring to them as "released claims"] should be dismissed pursuant to FRCP 12(b)(6) because those claims were released in the 1984 Settlement Agreement. Hence, M.J. Systems argues that this suit frustrates the judicial policy favoring settlements. Moreover, M.J. Systems argues and relies upon the affirmative defense of "release." Finally, M.J. Systems asserts that A2D's count seven, the breach of contract claim, fails as a matter of law.

*b) A2D's Contentions*

A2D advances contentions contrary to MJ Systems' contentions. A2D, while reasserting the contentions in its suit, state additionally that Riley did not release all prospective claims against MJ Systems in 1984. A2D also contends that the scope of the release raises a question of fact. Therefore, M.J. Systems' motion should fail.

## IV. STANDARD OF REVIEW

*(a) Standard of dismissal under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of an action on the grounds that a plaintiff has failed to state a cognizable claim upon which relief may be granted. *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). The Rule tests the legal sufficiency of the claims advanced in the complaint. *Grisham v. United States,* 103 F.3d 24, 25-26 (5th Cir. 1997). Therefore, a court will grant a 12(b)(6) motion to dismiss only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss under 12(b)(6), a court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations in the pleader's favor. *Oppenheimer v. Prudential Sec., Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). However, "conclusory allegations and unwarranted deductions of fact are not admitted as true." *F.D.I.C. v. Harrington,* 844 F. Supp. 300, 302 (N.D. Tex. 1994)(quoting, *Ass'n Builders, Inc. v. Ala. Power Co.,* 505 F. 2d 97, 100 (5th Cir. 1974)). Thus, a court's treatment of a motion to dismiss is limited to the four corners of the complaint. To survive a 12(b)(6) motion to dismiss, a plaintiff must plead specific facts, not mere conclusory allegations. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992); *see also Henrise,* 94 F. Supp.2d at 769.

3

*(b) Contract Interpretation*

The primary rules that apply to contract interpretation direct a court to: (1) determine and give effect to the intent of the parties. *Gonzales v. Denning*, 394 F. 3d 388, 392 (5th Cir. 2004); *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W. 2d 565, 574 (Tex 1996); (2) consider the entire contract and give effect to all portions of the contract, *Id.*; (3) generally give words their ordinary meaning, unless it appears that the intent of the parties would be defeated, *Denning*, 394 F. 2d at 392; *Lyons v. Montgomery*, 701 S.W. 2d 641, 643 (Tex. 1985); and (4) interpret the contract in light of the circumstances at the time the contract was drafted. *Columbia Gas Transmission Corp. v. New Ulm Gas, LTD*, 940 S.W. 2d 587, 589 (Tex. 1996). Applying these primary rules of construction, if a contract term or phrase has a definite legal meaning or interpretation, then it is not ambiguous and should be construed as a matter of law. *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W. 3d 123, 126 (Tex. 2004). Whether a contract is ambiguous is a question of law. *Id.* Hence, different interpretations by opposing attorneys do not create ambiguity. *Ibid.*

## V.   DISCUSSION AND ANALYSIS

M.J. Systems contends that this suit should be dismissed because A2D alleges a cause of action beyond the terms of the 1984 Settlement Agreement and because its breach of contract claim fails to allege the requisite elements necessary to state a cause of action. A review of relevant terms of the Agreement informs:

This Agreement made and effective as of the 16th day of March 1984, by and between Riley Electric Log, Inc. . . .and M.J. Systems, Inc. . .

. . .

(2) M.J. agrees to use the following best efforts in preventing any of RILEY'S MARKS from appearing on any product made or caused to be made by or on behalf of M.J. from and after the date first above written.

    (a) If the creation of a product by or on behalf of M.J. includes the use of any paper well log containing a header located at the beginning of the log and in which a RILEY'S MARK appears (such type of log being hereinafter referred to as a "RILEY'S LOG"), M.J. agrees to delete or otherwise mask or mark out, to the extent possible, such header so that such header does not appear in the M.J. product. . . .

    (b) In using the same RILEY'S LOG as is described in paragraph 2a. above, M.J. agrees to use its best efforts to delete or otherwise mask or mark out, to the extent possible any RILEY's mark appearing at any of the following locations. . .

    (c) In using the same RILEY'S LOG as is described in paragraph 2a. above, M.J. agrees to use its best efforts to delete or otherwise mask or mark out, to the extent possible, any RILEY'S MARK which is otherwise observed by M.J. at interior locations of either type of the logs.

(3) If in the course of using its best efforts to comply with the provisions of Paragraph 2 hereof, M.J. finds it necessary to place a permanent mark on a paper log owned by an entity other than M.J., and such other entity objects to the placement of such permanent mark on its log, M.J. agrees to notify RILEY of such objection within 10 days of M.J. becoming aware of said objection.

(4) RILEY agrees to use its best efforts to remove its RILEY'S stickers, label or tapes from all public copies of logs which RILEY uses for its reproduction purposes so as to further eliminate the result of confusion of the origin or affiliation of RILEY products. On any large scale paper log which is used by M.J. to create an M.J. product and which does not contain a RILEY'S sticker, label or tape in the Header, M.J. is under no obligation to search for sticker labels or tape otherwise contained within the body of said log.

(5) The total rights and responsibilities of the parties are set forth in this Agreement. . . .

. . .

(8) . . . Should any other default occur by either party to this Agreement, the non-defaulting party shall provide a 15 day right to cure to the defaulting

> party. Should cure not occur with said 15 days, the non-defaulting party shall be entitled to:
> 
> (a) sue for specific performance pursuant to this Agreement, or
> (b) give notice that its obligations to perform are abated until the default is cured.

See [Settlement Agreement, March 16, 1984].

In counts one, two, three, four, five, and six of A2D's amended complaint, A2D contends that M.J. Systems reproduces and distributes inferior copies of Riley logs that also contain the RILEY MARK. A2D contends that M.J. Systems' conduct is particularly egregious in light of the prohibitions against reproduction and use because M.J. Systems' conduct suggests that it is authorized to reproduce Riley logs and also placed its M.J. Systems' mark on the well logs. On these allegations, A2D has brought its suit for trademark infringement, breach of contract and violations of common law.

The Court is of the opinion that the trademark and common law claims are subsumed in the 1984 Settlement Agreement. The 1984 Settlement Agreement resolved pre-1984 conflicts but also contained language that addresses the prospective relationship between the parties. The operative language requires M.J. Systems to use its "best efforts in preventing RILEY MARKS from appearing on any product made or caused to be made by or on behalf of M.J. [Systems]." Other language concerning the deleting or masking of the RILEY MARK requires M.J. Systems "to the extent possible" to remove RILEY MARKS. Still other language states that "M.J. [Systems] is under no obligation to search for sticker labels or tape otherwise contained within the body of said log." Finally, the Agreement establishes that the "total rights and responsibilities of the parties are as set forth in the Agreement."

Applying the primary rules of contract construction, the Court finds and holds that the language of the contract is unambiguous and therefore, raises only a question of law. *Sturrock*, 146 S.W.3d 126. It is clear from the Agreement's language that the parties intended to "fix" a

6

past problem and create a manner and means for resolving future conduct that might be considered an infraction. The parties recognized that in the future, M.J. Systems might inadvertently reproduce and publish well logs that contained the RILEY MARKS. Hence, the "best efforts" language.

The Court concludes from this language, that the parties are bound to fulfill reciprocal conditions precedent before a suit can be filed. The Agreement's language states that a non-defaulting party must notify the defaulting party of the conduct that causes the default and give the defaulting party an opportunity to cure the default prior to filing a suit for specific performance. *See* [Settlement Agreement, para. 8(a)]. The Court also concludes that the language of the Agreement does not envision either party exploring the well log inventory of the other party in pursuit of potential violations. In this regard, the Court holds that A2D does not have the right under the terms of the Agreement to, through discovery, determine whether it has a suit against M.J. Systems for other than revealed defaults. *See* [Settlement Agreement, para. 5].

The Court holds that M.J. Systems' motion to dismiss, directed at counts one through six of A2D's suit, should be granted. Claims should be dismissed pursuant to FRCP 12(b)(6) where it appears that a plaintiff's suit is doubtful and the plaintiff cannot prove the facts necessary to support the claim(s). *Gibson,* 355 at U.S. 45-46; *Ramming,* 281 F 3d. at 161. The evidence presented failed to show, beyond conclusionary remarks, that A2D has any cause of action outside the terms of the Settlement Agreement. Therefore, counts one through six are DISMISSED.

Next, M.J. Systems contends that A2D's claim for breach of contract fails for lack of proper pleading. M.J. Systems contends that A2D has failed to allege that M.J. System has been

properly notified of its default conduct and given an opportunity, "best efforts," to remove the Riley stickers, labels, or tapes. It is the Court's opinion that the question of "best efforts" raises a disputed fact issue when properly pled. The Court is not certain that A2D has properly pled a breach of contract cause of action. However, the Court is of the opinion that such a plea may exist under the terms of the Agreement. Therefore, A2D has 20 days from the entry of this Memorandum to amend its pleading and assert a claim for breach of contract, pursuant FRCP, Rules 8 and 11.

## VI. CONCLUSION

In light of the discussion above, the Court hereby **GRANTS** the defendant, M.J. Systems', motion to dismiss in part and **DENIES** it in part. The plaintiff's request for leave to amend is **GRANTED** only as to its breach of contract claim.

It is so ORDERED.

Signed this 13th day of February, 2006

KENNETH M. HOYT
United States District Judge

8